Case number 20-1955. The United States of America v. Dante Whitley. All arguments not to exceed 15 minutes per side. Mr. Matthew Nolan Ball for the appellant. Good morning your honors and may it please the court. My name is Matthew Ball and I represent the appellant, Mr. Dante Whitley. I'd like to reserve four minutes of my time for rebuttal. The Supreme Court was clear in Rodriguez v. United States that officers may conduct inquiries that are unrelated to the traffic stop in one of two situations. Either first, where those inquiries occur contemporaneously with the diligent prosecution of a traffic stop. Or second, when those inquiries are supported by independent reasonable suspicion. Because neither of those two situations was present here, this court should reverse and remand to the district court with instructions to grant Mr. Whitley's motion to suppress. I'd like to start with the first issue, which is the issue the district court got incorrect. If you look at the video, which is before this court and everything else in the record, it's plainly clear that in the critical period of time, which is the point at which Mr. Whitley was given back his documents, his license of registration. It's about two minutes and 17 seconds into the video. To the point at which he is then ordered to exit the vehicle. In that critical period of time, all of the officer's conduct was focused on one thing and one thing alone. And that was the prosecution of their investigation of drugs. Nothing was happening during this time that, you know, contemporaneous with those questions that was focused on the traffic stop. In fact, while Officer Turmel, who is the individual who was speaking with Mr. Whitley, while he was asking him questions like, do you have any marijuana? You know, did you get any? Are you on your way to get some? The other officer, this is Detective Wolin back at the police vehicle, he was calling a canine unit. He was, you know, doing more to further the drug investigation. And so, you know, that conduct, you know, because it is not covered by... I'm inclined to agree with you about this first point, but I don't even know why it's that relevant. I mean, you know, you have a traffic stop, you think it's Timothy McVeigh, everything changes. You have a traffic stop, you see the scales, you have the prior information, everything changes. I couldn't agree with you more. Everything changed. So be it. You know, I think your brief is, quote, an entirely unremarkable trip to run errands. And I don't know. I'm just not sure. That's what seems to me the hard part of this case for you. It doesn't seem that unremarkable to me. It seems remarkable. And watching the whole video as the officers, I think, trying to do their best, seems pretty reasonable to me what they were doing. So that's where I'm coming from on it. So if your question is sort of... They see the scale. They've already got other suspicions. They're allowed to use the informant's tip of heroin. Even if that's not enough for probable cause, it counts in the reasonable suspicion. The fact that he's going in and out of these stores apparently not doing anything, that seems strange. The drug house, that seems strange. And the scale. I don't think you can point to this Michigan law and say, yeah, scales are fine. That's a rather ordinary thing to see on someone's lap when we stop them. Yeah, that's how I'm seeing it. So you're right. I agree. I don't think that scales are categorically sort of off the table in terms of whether they can count towards reasonable suspicion. But I think if we look at the totality... The tip is part of reasonable suspicion. It may not be enough for probable cause. I don't think it is. So you think the tip ought to be taken off the table like that piece of evidence doesn't count? What the district court said, and deference is required to what the district court said in terms of its factual findings and inferences. The district court said that the informant's tip was useful for only one purpose, and that was that it explained why... I thought it said like little usefulness. What's the actual word? Correct. So it said it was of limited value. Bingo. Bingo. Limited. Limited would be to reasonable suspicion. So the next sentence, however, Your Honor, it explains what that value is. It said it merely brought Detective Woolham to his surveillance post. So what the district court was saying was the value of the tip was simply that it explains why Detective Woolham was there. You have to keep that out of your mind when you're thinking reasonable suspicion to investigate drug trafficking as opposed to a traffic violation. That I don't see, and I don't think that's discrediting the district court decision at all. Ultimately, I think deference is owed to the district court's factual findings and inferences. I think this is a factual finding that the district court made. The government hasn't provided any reason why this court should disregard that factual finding, and I think the district court was clear that there's one use. You can make one inference from Officer Woolham's testimony about the informant, and that was simply that it brought him there. The district court was very skeptical of Officer Woolham's testimony on that point. Moving beyond that, though, to your point about sort of the sum total of what Mr. Whitley was doing, it's certainly the case, and I'm sure the government will point out, that actions that are themselves perfectly lawful when taken together, those actions can be part of what amounts to reasonable suspicion. But it's also the case, as the Supreme Court said in Reed v. Georgia, that when you have conduct that in its totality is far more consistent with very ordinary lawful behavior, that doesn't amount to reasonable suspicion. That amounts to a fishing expedition. And I think if we look at all of the actions that lead up to the stop, that's precisely what they are. They really are an unremarkable trip to go shopping. If any one of us walked outside and was counting money as we did, I think we could conceivably be pulled over if this is as little as... But that was just the first thing, walking out of the drug house with a big wad of cash, but then he stops down the street, in and out in 20 seconds in the driveway, and then he goes to the Family Dollar Store, and then he goes to the Mother Hubbard Liquor Store, and then there's a bag of marijuana in his trunk. So there are a whole bunch of little things that begin to think, I don't know if that's what I would be likely doing that morning. Your Honor, I think it confirms that it was more consistent with a shopping trip. He goes to two stores, and I think the government suggests these were very quick in and out trips, but that's not true actually of the stop at the Family Dollar. There's nothing in the record to suggest that that was brief. So he goes into the Family Dollar, very unremarkable. He goes into the liquor store pretty quickly. Comes out with no liquor. I mean, that's what you normally go to a liquor store for. None that anybody can see on him. That's certainly true. But the point is that at this point, I think nothing that Mr. Whitley has done would tip anybody off that what he's doing is unlawful. He has taken out money and gone to two stores. That's entirely unremarkable behavior. I think the critical question in this case is simply, what does the scale do to what the officers may have suspected at the time? Why doesn't the scale alone give reasonable suspicion in the sense that the scale was found on his lap at the traffic stop? Your Honor, because the legal landscape in Michigan has changed. The Michigan voters have decided that a scale, a marijuana accessory like this, is categorically permissible. And so any inferences that officers would draw from what a scale means in a prior legal regime are weaker now. They mean much less than they used to. Well, I don't think the Michigan law specifically says scales are, hey, everyday things now. I think it just says, well, you can have up to two and a half ounces of marijuana for personal use, and that's not illegal. Which would make the paraphernalia of a pipe different from the paraphernalia of a scale. Those are two distinct things in terms of what they might suggest. I completely agree. But it is still the case that Michigan law, in addition to outlining the limits of lawful use for marijuana in Michigan, says marijuana accessories, and I think it's pretty clear based on what the Michigan Supreme Court has said, what the law says in Michigan, that includes a digital scale, marijuana accessories are categorically permitted. It's permitted to transport marijuana. That's not illegal in Michigan. You can have marijuana under 2.5 ounces in your car. And I don't think a scale necessarily implies that somebody has more than that amount. It's just a scale. Yeah, they're bringing the scale to make sure they're always under 2.5, for example. You could. You absolutely could, Your Honor. Ultimately, it's a digital scale. That's what a typical consumer would do in Michigan, right? Everybody travels around with a scale in their lap. Make sure it's legal. Your Honor, I think in this case, ultimately, I have some sympathy with the officers because their experience is drawn from everything that happened before the MRTMA went into effect. And that's true for everybody. We've had this massive shift towards legalizing marijuana. We're all sort of geared towards looking at some of the same clues that suggested illicit activity that now must change. And one of the ways in which they must change is these inferences that you would draw that might lead to unlawful activity in the past are simply weaker now. But there was the heroin aspect, and maybe you can refresh for me. Was that entirely based on a confidential informant's tip? There was no other information that led to the suspicion that the address on Ridgebrook Drive was connected to heroin? That's right, Your Honor. That's right. And so I think the government, insofar as they suggest that the officers suspected heroin activity, to the discussion we had earlier, I think that argument is really premised on subverting the district court's factual finding that that tip, for all of the reasons the district court discussed, is not ultimately relevant for that basis. The district court ultimately did not go through the reasonable suspicion analysis in the way that we're discussing. It focused simply on the traffic stop. But it did discuss the tip, it discussed Detective Bloom's credibility, and it said the only use of that information is that it brought him there. So without that, there's really nothing to suggest heroin. Just out of curiosity, take the scale out of it for a second and just say roughly everything else is the same. And so at the outset they decide they want to invoke the MIMS point of getting someone out. So there's no scale, there's not even marijuana there. But we'll say everything else is the same. So it's quote a pretextual stop in the sense they're following someone, they arrest them for traffic violation, not drugs. They get there and they say, you know, we'd like you to get out of the car. You know, you have these two problems. And MIMS says they can do that even for, you know, run-of-the-mill traffic violations. And at that point everything stays the same in the sense of he won't do it for 15 minutes. What are officers allowed to do with that and not do with that? I mean, I assume it was quite good behavior not to forcibly extract him. It seemed in that sense they were quite reasonable and patient. But are they allowed to take that? Is more room for suspicion or is that a forbidden inference? In other words, is the... The refusal to get out of the car, can they infer from that additional illegal activity? Because I'm saying everything else is the same. They were following him for drug trafficking. That is what they were thinking. And at that point when he gets out, he refuses to get out. I'm taking the scale out of it. I'm taking the marijuana buds out of it. I'm just trying to figure out, is that a forbidden inference? I mean, because they are allowed to ask him out. He's not really exercising his right. He doesn't have a right to stay in the car. Can they then infer from that? Oh, now we've got... There's something funny going on here that's beyond what we've seen. Or no? I think it's possible that they could. I don't think that that matters here. Okay, and you would say that doesn't matter here because that's not what happens. They don't go up to the door and say, get out. They go up to the door and engage him and it's only the scale. But I guess that's what I'm a little puzzled by with your argument because I don't quite understand why... It seems to me the scale legitimates more conversation, more suspicion. We have a debate about how much. But it's certainly a one degree more. It's more. And now we're back to the same problem. He won't get out. And isn't that quite suspicious? I mean, it's not suspicious when you exercise your right not to say something. But he doesn't have a right to stay in the car under MIMS. So why isn't that legit? Or what am I missing? I would say, if I understand your question correctly, if you think of two situations, one is the officers pull him over and say, you didn't stop at a private drive. Get out of the car. That's entirely permissible. Now, if he refuses to get out of the car, yeah, I think potentially that would be indicative that he's trying to... Why not extend the stop until he gets out? That seems to me totally permissible. I think they totally could, Your Honor. I think the problem is... Well, that's his case. It's not, Your Honor. And the reason is because, in that case, they would be asking you to leave the vehicle because they're investigating the traffic violation. In this case, they pull him over for the traffic violation, embark on a completely separate investigation of drugs, and then, as part of that investigation, say... This is the whole segmenting of the case that I've never understood. I don't think cases have these binaries. They decide not to do the MIMS. Maybe they're not that worried. They're happening upon Timothy McVeigh. They don't think there's anything else. But then he won't get out, and at that point, you're allowed to think something's up. I don't care when that happens. That seems to me... You can extend it for three days if he won't get out. Right. But, Your Honor, the basis of the stop must be lawful at the time that you are asked to get out of the car. So if the stop is unlawful... But this was lawful? It was not at that point, Your Honor. Oh, two and a half minutes is too long. I see. So two and a half... One minute, 45 seconds is... Ah, I got it. So at the point that they're conducting their investigation, they say, now you've got to get out. Well, they need to have reasonable suspicion that underlies the stop at that point. If they ask you at the beginning for the traffic citation, that's what justifies MEMS. MEMS has to be predicated on a lawful stop. At that point... That's a pretty short... Under two and a half minutes, apparently. It is, but, Your Honor, I would submit that... I think this is an easy case in the sense that basically what happened is the officers pull somebody over, ask him, almost exclusively, do you have any drugs, tell us more about the drugs, and then say, I am asking you to get out of the car to investigate the drugs, right? We don't need much longer than that because it's very clear within that two-minute period that the officers are investigating. When within the two... Is it two and a half minutes until they find the scale? Approximately, yes, Your Honor. Got it, right. So after... So then they see... So your thing is they should never have seen the scale. I don't think it's that they never should have seen it, Your Honor, because... They had no right to see it. No, I believe they see it at the point that Mr. Whitley hands over his documents. And the stop is lawful at that point because they're prosecuting the traffic stop, right? So as they're waiting for Mr. Whitley to get his documents, they can ask him whatever they want. The problem is after he hands them over his documents, they've got what they need. They need to keep prosecuting the traffic stop. They can't simply abandon it unless they have reasonable suspicion to suspect something else. And in this case, they did not. The scale was not enough. I got it. Okay, well, you got your rebuttal. All right. Ms. McManus. May it please the Court. Good morning. Jennifer McManus on behalf of the United States. The district court correctly denied the defendant's motion to suppress the evidence in this case for two reasons. As the court found, the traffic stop had not concluded by the time probable cause developed to search the vehicle. Alternatively, when the officers conferred and asked the defendant to step out of the car, they had reasonable suspicion to believe that he was engaged in drug trafficking. I think I'd like to start just by focusing a little bit on the chronology just to make that as clear as I can. We've talked a little bit about sort of two and a half minutes now. Not a lot of time elapsed from the time the stop began from the time the scale was spotted. And he was asked to step out of the car. But drilling down on that even just a little bit more, I will take issue just a little bit with my friend on the other side when he said that right from the get-go, there were no questions asked, there was no attention paid to the traffic purpose of the stop. In fact, when you watch the video, the traffic stop begins with the time stamp on the video at about 7.44 is about when the officer walks up to the vehicle and he says, you know, what's up? You know, he bends down, puts the light in, he asks for the license and the registration and proof of insurance. The officer does ask at 7.45.08, that's about 30 seconds, 45 seconds into the stop, is there anything illegal in the car? And then he asks a follow-up, no drugs or anything like that? And the defendant says no. He can see on the video that while this is occurring, the defendant is gathering his driving documents and Officer Turmell asks, you know, where are you coming from? Mother Hubbard, the defendant responds. And then you can actually hear Officer Turmell pointing out, this is the registration, not the insurance. That's at 7.45.35. So those are the three questions that the officer asks. Those three questions are it. But to me the problem occurs when Officer Turmell goes back to the police car with the documents, the driving documents, and says to the other officer, hey, he's got a scale, and then they start to investigate the drugs, but they don't do anything to process the legitimate reason for the stop, which was the traffic violation for failure to stop going out of the Mother Hubbard and the Family Dollar Store parking lots. As we put it in our brief, I think it's certainly the case that at that point their investigatory focus shifted. The purpose of asking the defendant to step out of the car, as Detective Willem testified, was dual. First, they wanted to ask about the scale, and they wanted to investigate what they perceived to be an additional indication of drug trafficking. And second, obviously he testified, the traffic violations. And I think it's all sort of intertwined. If it had been the traffic violations, they would have asked him to get out of the car right away. And as I understand the discussion between the two officers, they really completely shifted into the pursuit of the drug issue and did not do anything to deal with the traffic violations. So, you know, to make your case better, one of them should have been processing the traffic violations while the other one was pursuing investigating the drug issue. Well, Judge Moore, respectfully I would disagree that, you know, they should have asked the driver to step out of the vehicle right from the get-go or else they, you know, have to have some additional justification. Those are very fact- and circumstance-specific decisions to make for officer safety purposes, and the officers may well have thought there was no particular need to ask him to step out of the vehicle at the get-go. But once they saw that scale, I think it strengthened their concern that, in fact, he was engaged in drug trafficking potentially. And that escalated the concern for safety and escalated the need and increased the need to make sure there were no weapons in the car. So, yes, they wanted to ask about the scale. Yes, they were concerned that he was engaged in drug trafficking. But in my view, and as Officer Willem testified, there was, you know, a couple of reasons for asking him to step out of the car, to ask about drug trafficking and to make sure that the scene was secure. You can see on the video that when Officer Turmel returns to the car, he goes to the driver's side this time. He's on the passenger side to begin with. And it's at that point that Detective Willem sort of also joins him at the car, at the rear of the car on the right, and takes a position that makes it, I think, pretty clear that he's, you know, there to ensure the security of the scene. Because Turmel is now at the driver's side, and he's, Detective Willem is there, sort of with his hand near his gun, sort of looking at the scene as it unfolds. So I think there's an officer safety concern there that sort of precludes Detective Willem. Isn't it fairly clear that, as Judge Moore was pointing out, once Turmel goes back and speaks to Detective Willem with the documents, that Willem basically converts it no longer to a traffic stop but to a drug investigation? And when they go, therefore, back to him to want him to step out, it's no longer a traffic stop violation they're pursuing. And so, therefore, the key is, is there now reasonable suspicion to continue the detention? Isn't that the real issue here? We would contend that there were dual motives at that point, and that, in fact, they had not abandoned the traffic purpose of the stop. How does that, what authority can you cite as for saying it's still a dual purpose, that there's still a traffic stop component at that point? Is there any case you can cite us? Well, you know, the district court relied heavily on United States v. Lash, which is an unpublished decision of the court, but it is pretty factually similar. And so is United States v. Tompkins from the Seventh Circuit, also unpublished. But both of those cases are pretty factually similar in that there are events that take place that cause the officer to have some concern. So in Lash, you know, he returns to the vehicle at that point. He had already done all the steps basically necessary to prosecute the stop, but, you know, at that point he notices a baggie. The guy's trouser leg. Yes, and that arouses his suspicions. So he says, the officer says, you know what, actually I'd like to see that rental agreement. And he testifies at the hearing in that case that part of his motivation was to buy some time in order to investigate further. But, you know, so there's sort of dual purposes going on there. You know, he hasn't completed the traffic stop, but something has taken place to arouse his suspicion that there's something else going on there. And so there is a sort of dual. We can't say that a traffic stop continues until the officer gives him back, say, his papers. Because that way the police could never give you back your papers and investigate theoretically a traffic stop indefinitely. And that's not what Rodriguez says, is it? Of course not. And absolutely there's an obligation to be reasonably diligent in prosecuting the traffic stop. Rodriguez says that. And, you know, that's an objectively reasonable determination that courts are going to review. And if it takes, you know, if the officers are engaging in a number of tasks that are unnecessary, if there's a factual finding from the district court that they're being dilatory, those things will go into the mix in determining whether there was an unreasonable decision. What is your response to your opposing counsel's point that all these suspicious, reasonably suspicious things are just what a typical citizen would do, and therefore there was no reasonable suspicion? Well, obviously we disagree with that because we know, of course, from the Supreme Court's cases, including our vizu, that a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. Here there were at least six factors that contributed to reasonable suspicion to believe that the defendant was engaged in drug trafficking. The court has touched upon most of them, in fact I think all of them already. There was the fact that he was witnessed exiting a house that a known confidential informant said was a location where heroin was being distributed. While you're answering that point, can you just respond to his point that, well, the trial judge made that irrelevant to what happened at the stop? So we disagree that that makes it irrelevant. Of course the district court did say that there was limited value to that, and I think that is a valid observation. If this information was set out in a search warrant application and the question was whether there was probable cause to go in that house, there would be a real question as to whether the reliability of the informant was established. But the district court never said, this didn't happen, I don't find Detective Willem to be credible on that point. In fact, to the contrary, the court said, okay, I accept that this is why they were there, because they got a tip that heroin was being distributed there. Does it mean that we know that the defendant had heroin? Does it mean that there was definitely heroin in the house? No, but it is one factor that contributes to reasonable suspicion in this case. And in fact, the first mention of marijuana was from the defendant. So my friends on the other side want to make this all about marijuana, and Michigan has legalized marijuana, but he's the one who brought up marijuana, the defendant, when he said, you know, why do you have the scale here, was a question put to him after the officer asked him, are there any drugs in the car? And he had said no. The officer says, well, what's that scale for? And he said, I'm on my way to buy weed. So yes, the defendant who sort of brings up marijuana and this notion that marijuana is legal, the officers were not investigating what they perceived to be, you know, lawful use of small amounts of marijuana. They were investigating potential drug trafficking. And at its inception, it didn't even involve a suspicion of marijuana trafficking. It's what it turned out to be for this defendant, but that wasn't the suspicion at the beginning. So when exactly in the timeline did they notice the scale? So it's two and a half minutes before they ask him to get out. When is it that they notice the scale, roughly? So I have at 744.37 is when the officer walks from the cruiser to the passenger. Is that a half minute or a minute or what is that? Yeah, so at 744.00 p.m. in 30 seconds is sort of when, I have 37 seconds, but, you know, give or take, you know, when you're watching the video, the district court says 744.00 is when the stop begins. That's when the officer walks up to the passenger side of the vehicle and begins to stop. And you're saying it's 744.37? That's what I've got. 37 seconds. Yes. Can I just ask, maybe I'm just not getting this case. I'm not sure what the traffic stop has to do with it anymore. I mean, I feel like this whole segmenting of, oh, we win because we're allowed to get people out of cars, he refused. I just don't understand that line of argument for what it's worth. I mean, I know that it was separated at the trial court. It's been separated here. I mean, I go back to my Timothy McVeigh example. No one is debating, gee, how long can you do a traffic stop when you suddenly think you've got Timothy McVeigh? And obviously this isn't Timothy McVeigh, but the point I'm making is 37 seconds in, it's just a different case. And why don't we just think about it through that lens? What am I missing? So I don't think you're missing anything, really, Judge Sutton. First, I just want to clarify that when I said 37 seconds, that's when the stop begins, 7-44-37. When he actually sees the scale, it's about a minute later. Okay, so 60 seconds in. Just so you know, that's the question I'm asking. I don't want to know anything else. So if it's 60 seconds, that's what I want to know. I think it's 60 to 75 seconds. Okay. Okay, so 60 to 75 seconds in. Why wouldn't one say that that is not remotely too long to engage with someone about a traffic stop? That's like off the table. Because there was a legitimate violation. You're not supposed to process it within a minute and a half. You have a scale. This is now a case about a scale plus, rather than... I just don't understand why we have to debate this other point. So I don't think you need to, and I don't think we need to. If the court wants to affirm on the alternative basis that there... But did this get segmented because you argued it that way? Is that what happened in the case? You were saying, listen, this is just a traffic stop. We have these rights, and two and a half minutes isn't too long. And when he resisted a two and a half minutes, everything else became legit after that. Was that what you were thinking? So I think it was argued in the alternative, and that's how it's been argued on appeal. In part because the district court found the basis of the district court's ruling was that the traffic stop never ended. Right, and we may say that's wrong. You may, or you may not, hopefully. Or you cannot even reach that question, I think. I think you could say whether or not the traffic stop... I feel like I'm just missing something. Why the magic of traffic stop? The question is reasonable suspicion, sometimes probable cause. And at a minute in, it's just a different investigation, and not illegitimately so. I think the friend on the other side would agree it's different. He would say not that different, but he would say there's a difference. That's all that matters. So I think a lot of the Supreme Court cases and a lot of this court's cases analyze traffic stops in a certain way. So I think maybe it was presented this way because that's how typically the courts kind of analyze traffic stops. What can officers do, and how long can they do it? So I think that's how it was conceived, but we certainly would agree that there was a shift here. First of all, we agree that from the beginning the officers were interested in determining whether the defendant was engaged in drug trafficking. We don't dispute that. And we would agree that once the scale is spotted on his lap, that that cemented their suspicions and justified a brief additional detention to confirm or dispel their suspicions. And we would urge the court to affirm on that alternative basis. We think the findings are adequate. Okay, thank you very much. I appreciate it. Mr. Ball. Maybe what I'm missing is the MIMS grows out of really probable cause. Is that what's going on? MIMS grows out of probable cause of a violation of law, and that's what gives, in addition to safety, the officer's right to get someone out. But if you're in reasonable suspicion land, although I just got to believe MIMS has Terry reasonable suspicion stuff in it, but is that my confusion? No, so, Your Honor, I think this is what has happened, which is when you watch the video, I think just a common sense sort of looking at it from a reasonableness perspective in the Fourth Amendment, it's pretty clear they're investigating drugs. In the district court, the briefing focused on the motion to express on was there reasonable suspicion of, it was a marijuana offense that the government briefed it as a case about violations of these provisions of the MRTMA. But really how we got here is the district court ruled on this affirmative ground, which really wasn't discussed by the party. And I think part of the reason why is because there are some difficult questions of law with sort of this novel question of what amounts to reasonable suspicion of marijuana in a state in which it's legalized. And so I think the way we sort of went wrong here is the district court analogized this case to Lash. And this is the type of analysis that the court did in Lash. But it doesn't really map onto this case very well because Lash wasn't really a Rodriguez case. Lash was a case where the officers didn't ask any unrelated questions. It's just that towards the end of the investigation, they asked to see the rental agreement of the driver. And this court had already ruled back in Bell that a question about a rental agreement wasn't related to traffic. It's something that you can always ask. So really the question in Lash was simply towards the end of the stop, can you ask another question related to the stop? And then can you ask somebody to get out of the car because you're still investigating the traffic violation? That's Lash. Lash is very different though because Lash did not involve, as this case does here, something that happens during the stop that completely shifts the focus of the officers to investigate something else. And so we would be in a different place, I think to your questions earlier, we would be in a different place if the MEMS question was a question that arose earlier in the stop. Because ultimately the MEMS question is simply at the point where you ask somebody to get out of the car, do you have reasonable suspicion or probable cause? But I agree with you that sort of breaking things up into these discrete periods of time to talk about, was this a traffic violation or not a traffic violation, is not really the right way to think about this case. I think the right way to think about this case is simply, were the officers investigating the traffic stop? No, they weren't. They were investigating this narcotics violation. And so at that point, did they have reasonable suspicion to do so? So your opponent said that there are six reasons why there was reasonable suspicion. Why wasn't there? Are you not segmenting it? I mean, like one could go to a Family Dollar store and come out with nothing. One could go to Mother Hubbard's liquor store and come out with nothing. Those are possible reasonable things. But why isn't there reasonable suspicion here? I think there's not reasonable suspicion because marijuana accessories and marijuana have been declared categorically lawful by the people of Michigan. So do the police officers have to believe a driver who has a scale on his lap when he says, oh, it's for my marijuana as opposed to for any other illegal drug in Michigan? Not necessarily, but they need to have specific indicia that something unlawful is going on. I think the comparison actually to glass bottles and prohibition is actually pretty apt. If you're in the era of prohibition and you see glass bottles in the back of somebody's car, it's a very reasonable inference that that person is bootlegging. There might be other illegal things you could do with glass bottles, and I'm sure officers pulled people over for that during prohibition. After prohibition, if you see glass bottles in somebody's car, it's simply a weaker inference because the likelihood that those objects are being used for something unlawful is far, far less. You would say there's a difference between one glass bottle and 50. Right, absolutely. Why isn't that the difference between a pipe and a scale? A pipe suggests individual use. A scale, I don't know. I'm no expert, but that doesn't seem obvious to me. Your Honor, I don't think there's anything inherent in a scale that suggests that it's being used for mass amounts, for instance. No, but a scale could be used by a dealer to weigh out the amounts of marijuana as opposed to by the user to make sure that he's getting less than 2.5 grams or whatever it is that would be legal. It certainly could. That's possible. But the question is not, you know, is there... I mean, again, I'm so far outside my expertise here, but there's no such thing as someone rolling a marijuana cigarette and saying, let's weigh it first. That doesn't happen. I'm not sure either, Your Honor. But I will say at the motion to suppress hearing, Detective Woolen did testify that scales were also something that he had seen used in the context of marijuana in a lawful manner. So what percentage of the time they're used lawfully or unlawfully, that's a factual question that ultimately the district court could decide. But again, the point is the inference of a scale, the government has cited a number of cases in which there was a scale. The inference of a scale simply means something very different under Michigan's current legal regime. All right. Well, fair enough. Thank you both for your interesting case, for really helpful briefs and arguments. Mr. Ball, I see you're court-appointed. You know, Mr. Whitley's really lucky. So thank you for your representation. It's a great service to him and to us, and we really appreciate your advocacy. So thanks a lot. Thanks to the government as well. All right. The case is submitted.